UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**RECEIVED**

OCT   1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Russell Hill

Plaintiff

v.

The Federal Judicial Center

Defendant

Civil Action No. 05-1567 JDB

---

## AMENDED COMPLAINT

---

The "Plaintiff", Russell K. Hill in effect of the District Court order issued on 8/20/07, would submitt this amended complaint setting forth Hill's common law right of access to public records, and Hill would ask the Court to consider the following:

Plaintiff Hill asserts that the documents or study sought from the Federal Judicial Center ("Center" hereafter) are public documents or public records, subject to the Federal Advisory Committe Act ("F.A.C.A.") 5 U.S.C.A. App.2, which requires among other things, that "advisory committees" make their documents available for public inspection. *Id* at § 10(b); and even though every government-related group is an "advisory committee" under the statue, the Center is an committee subject to FACH in [every aspect]!

The Center operates as an "auxiliar[y]" within the judicial branch of the government, and by all appearances may be entitled to the exception

from F.O.I.A is (Freedom of Information Act) and F.A.C.A.'s definition of "agency" for the Courts of the United States, but not the F.A.C.A. definition of "advisory committee". The Federal Adisory Committee Act (F.A.C.A) § 3 (2) states:

The term "advisory committee" means any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof (hereafter in this paragraph referred to as "committee") which is --

(A) established by statue or reorginazation plan, or

(B) established or utilized by the President

(C) established or utilized by one or more agencies,

in the interest of obtaining advice or Recommendations for the President or one or more agencies or officers of the Federal Government....

Id at §3(2) (emphasis added) "Agency" is defined by Reference to the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 (1) - F.A.C.A § 3 (3). Under the APA, "'agency' means each authority of the Government of the United States," 5 U.S.C. § 551(1), but does not include "the courts of the United States," 5 U.S.C. § 551(1)(B)

The Center was clearly established statue, whose enactment as a whole included legislative construction and endorsment by the [c]hief executiv[e] power of the United States. The Center established by the dual sovereign governmental process as a "third" party or "auxilary" of the courts, for the purpose of futhering the development and adoption of improved judicial administration in the Courts of the United States. 28 U.S.C.A §620(a)

Here, the obvious Congressional intent as endorsed by the executive authority of the President, is clearly to preserve the Rights of "the public

of the issue" or the "status quo". The matter of Legislative and executive framers of the Federal Judicial Center Act 28 U.S.C.A § 690, as it relates to intent, is evidenced by the foremost function of the Center's operation as described by its framers;"... on the part of other public] and privat[e] persons and agencies. §690(b)(1):

(b) The Center shall have the following functions:

(1) to conduct Research and study of the operations of the courts of the United States and to stimulate and coordinate such Research and study on the part of other public and private persons and agencies;

The clear Congressional intent here is a matter of "public importance", and the idiom expressed implies clear intent of publi[c] interaction in preservation of the Right of the status quo to Regulate government actions as derived under the 10th Amend of the United States Constitution. Congress from the one set embraced the general public interest in the openness of governmental processes, and so made provisions for public access to details of the Results of studies and determinations made pursuant to Federal Judicial Center Act 28 U.S.C. §690 in preservation of expressed status quo.

Congress included among the duties of the Board of the Federal Judicial Center to make public, "the operation of the courts of the United States deemed worthy of special study." [FN-1] The "Study of Intercircuit Conflicts and Structural Alternatives For Courts of Appeals by Federal Judicial Center" sought by Plaintiff Hill herein, was Requested by Congress and deemed worthy of special study. Thus, there exist a inherent public interest to the details of the Results of the study

3 of 7

and determinations, due to the fact the study or conducted research, was initiated and coordinated on the part of public and private persons and agencies, § 620(b)(1), as it relates to "Creating unfairness to litigants in different circuits, as in allowing Federal benefits in one circuit that are denied in other circuits."

FN-1: (6) consider and [R]ecommend to both publi[c] and private agencies aspects of the operation of the courts of the United States deemed worthy of special study; and
28 U.S.C. § 623 (a)(6)

The aspect of "Intercircuit Conflict" had been deemed worthy of special study by Congress, and § 623(a)(6) removed the realm of discretion and created a ministerial duty on behalf of the Board of the "Center" to make its considerations or its study and its recommendations known to the public. Clearly, Congress has declared the Center's considerations and Recommendations public records; and common law Right extends to public records. Schwartz v. Dept. of Justice, 435 F.Supp. 1203, 1204 (D.D.C. 1977) aff'd, 595 F.2d 888 (D.C. Cir. 1979) Congress clearly intended for the Center's documents to be available for public scrutiny and made no provision for prohibiting access to the Center's documents.

The Center was established as an aid to the government in the service of "We the People", such an idiom is expressed in 28 U.S.C. §§'s 620(b)(1) and 623(a)(6). Thus, common law right of access to Research and studies conducted by the Center is inherent of the public class, because the idiom expressed implies servitude to such a class, and any related documents as Public Records. As an inherent class member Hill and all of America have

4 of 7

Right of access to the Center's considerations and recommendations.

Further, the Center's duties include pervasive entwinement with several executive agencies of the United States and Presidential Cabinet members that utilize the Center in the interest of obtaining advice or Recommendations for the President or one or more agencies or officers of the Federal Government. Such as the Department of State (Secretary of State) [FN-2] and the Department of Justice (Attorney General), etc..., etc....,.

FN-2 ... to cooperate and assist agencies of the Federal Government and other appropriate organizations in providing information and advice to further improvement in the administration of justice in the courts of foreign countries ...
Id at § 620(b)(6)

FN-3: The board shall transmit to Congress and to the Attorney General of the United States copies of all Report[s] and Recommendation[s] submitted to the Judicial Conference of the United States....
Id. at § 623 (b)

The Center's studies and advisory opinions are authorized by 28 U.S.C. § 620 et. seq.. The studies and opinions may be relied upon by any person and any person or agency involved in the Federal Government [FN-4], and no provision of § 620 et. seq. precludes the enforcement of the F.A.C.A. requirement that "advisory committees" make their documents available for public inspection 5 U.S.C. App. 2 § 10(b). Clearly, the Center's documents are public records and their obviously is no govern-

5 of 7

ment interest in the secrecy of the Center's documents against the public need for the documents.

FN-4 : (4) present to other government departments, agencies, and instrumentalities whose programs or activities relate to the administration of justice in the courts of the United States the recommendations of the Center for the improvement of such programs and activities;

id at § 623 (a) 4

It well understood that the government has a strong interest in preventing public release of the "Advisory Group's" [P]re-decisional records, at least in part to avoid chilling the, "frank exchange of ideas and opinions" in which the "Advisory Group" is designed to engage. see Dudman Comm. Corp. v. Dept. of Air Force, 815 F.2d 1565, 1567 (D.C. Cir 1987) (discussing analogous FOIA exemptions for deliberative materials) However, the Center having completed its consideration and determinations, and submitted its recommendations to the Judicial Conference, Congress, and the United States Attorney General, those documents considered, as well as the Center's recommendation have now become public records; and there is no legitimate governmental interest that outweighs Hill's need for the material—particularly in light of the fact that Hill ultimately has legal right of access to and an opportunity to comment upon any proposed rules resulting from the Advisory Group's deliberations, as allotted by Congress and the Chief Executive Officer of the United States upon establishing the governing statues 28 U.S. C. § 620 et. seq.

6 of 7

In determining whether public right of access exist a court should first decide whether the document sought is a "public record." If the answer is yes, then the court should proceed to balancing the government's interest in keeping the documents secret against the public interest in disclosure. Note that this balancing test should not be an abstract inquiry, because the party's are neutral and deference is not a factor. Thus, the inquiry should focus on the specific nature of the governmental and public interests as they relate to the document itself, as well as the general public interest in the openness of governmental processes. Mokhiber v. Davis, 537 A.2d 1100, 1108 (D.C. 1988)

   The inquiry here would cause the "public at the issue" or "the status quo to emerge as the prevailing party, hands down.

   WHEREFORE PREMISES CONSIDERED, Plaintiff Hill moves the District Court for an order directing the Federal Judicial Center to provide Plaintiff Hill with a [c]omplete "Certified True Copy" of "Study of Intercircuit Conflicts and Structural Alternatives For Courts of Appeals by Federal Judicial Center," as requested by Congress in, Pub. L. 101-650, Title III, § 302, Dec. 1, 1990, 104 Stat. 5104, as amended Pub. L. 102-572, Title V, § 502(c), Oct. 29, 1992, 106 Stat. 4513.

Date  9/20/07

Respectfully Submitted

Russell R. Hill