UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**RECEIVED**

JAN 7 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Russëll Hill
Plaintiff
vs
The Federal Judicial Center
Defendant

Civil Action No. 05-1567

Plaintiff's Response To:
DEFENDANT'S MOTION TO DISMISS

The "Plaintiff," Russëll K. Hill moves the District Court for a denial of "Defendants Motion to Dismiss" and stay of In forma Pauperis ("I.F.P.") status in preservation of the three (3) previously granted I.F.P. statuses entered by District of Columbia ("D.C.") courts in the case subjudice. Plaintiff firmly asserts that the District Court may summarily, " deny Defendants Motion to Dismiss", " Sustain IFP status", and " grant requested relief due to default, not limited to but including, award of all cost, including reasonable attorney fees incurred and award of one thousand dollars for each day that Hill is denied right to inspect or recieve a " certified true copy of said public records, due in part to principles of " judicial estoppel"," collateral estoppel,"" law of the case doctrine", [inter-alia] . . . – – that successfully bar revocation of Hill's IFP status, due to earlier or recent resolutions of those issues by D.C. courts, which precludes the defendant's requested revocation. The defendants attempt to assert a trait of character of Plaintiff

Hill and have failed to identify substantially different evidence, a change in controlling authority, or any error in the D.C. courts prior decisions or accomplishment of earlier resolutions. Thus, the prior decisions on the issues in question render the judicial expansion of the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915 nugatory, as it pertains to retroactivity of mythical sanctions.

Foremost, it is noteworthy that, "a district court abuses its discretion if it does not apply the correct law or if it rests its decision on clearly erroneous finding of material fact. United States v. Washington, 98 F.3d 1159, 1163 (9th Cir 1996) (a party's failure to cite relevant authority, or discuss relevant legal principles, does not relieve court of duty to apply correct legal standard.)

The crux of the issue at hand is not based primarily on statutory rights, Rather Hill initially and continually claims that the Federal Judicial Center's ("F.J.C.") failure to respond or decision to turn down his request for a "study of Fifth Circuit Court Practices" and request for copy of "Study of Intercircuit Conflicts," was arbitrary and enforced with a discriminatory intent and purpose, violative of Hills rights under the Equal Protection Clause of the Fourteenth Amendment.

Frankly, a necessity arises to determine if the substantiated Equal Protection Violation reaches realm of a distinguishe[d] exception which precludes judicial expansion of the Prison Litigation Reform Act ("PLRA") 28 U.S.C.A. § 1915 in the revocation of I.F.P. proceedings based on retroactive sanctions, due to irreparable injury standards that obviate "structural errors" in violation of Tenth Amendment right of the people to regulate its government, guaranteed by the guaranty clause of Article 4 § 4. U.S.C.A. Const. Act. 4 § 4; Amend 10; Brecht vs Abrahmson, 507 U.S. 619, 623, 629-30 (1993) (automatic relief for structural defects irregardless of it effect on the outcome of the proceedings)

## EQUAL PROTECTION ANALYSIS

The F.J.C. has openly admitted to receipt of Hills request for research and study of the operation of the courts of the Fifth Circuit jurisdiction, and request for

previous "Study of Intercircuit Conflicts" submitted pursuant to 28 U.S.C.A § 620 (b) (1), but F.J.C. failed to respond with deliberate design. Thus, F.J.C. formed a base for an Equal Protection Claim for discriminatory intent, due to specific regulations of § 620 (b)(1) that by implication require a response to submissions from the public and private persons...., or the "criminal and civil litigant" stance from which Hill attacks Fifth Circuit Court Practices. Even though, F.J.C. may qualify for exemption from the Administrative Procedure Act because its provisions do not apply to "the courts"- that is, the judicial branch; F.J.C is not exempt as a department of the courts from requirement to follow its own regulations in preservation of fundamental procedural rights of American citizens. See Anderson - El v. Cooke, 234 Wis. 2d 626, 610 N.W. 2d 821 (Wis. 2000) (We base our conclusion on the [F]irmly established rule that governmental entities must be "bound by the regulations which [they themselves] ha[ve] promulgated." Vitarelli vs. Seaton, 359 U.S. 535, 540, 79 S.Ct. 968, 3 L. Ed. 2d 1012 (1959) ).

The stance taken by Petitioner Hill of public interest and concern, even as a "class of one" is viable under the Equal Protection Clause. Village of Willowbrook vs Olech, 528 U.S. 562, 120 S.Ct. 1073, 145 L. Ed. 2d 1060 (2000). Unlike a "prisoner", a "Criminal / Civil litigant" qualifies as a suspect class to invoke the applicable level of scrutiny or the warranted "Strict Scrutiny" under the "rational relationship" test for equal protection analysis, because the Cleburne standard of [d]istinguishe[d] authority for Equal Protection Claims implies that "a standard of judicial review applied to a classification of "criminal / civil litigant" or "public of the issue "can run afoul of the Equal Protection Clause if there is no[t] a rational relationship between the disparity of treatment and some legitimate governmental purpose." City of Cleburne vs Cleburne Living Center, Inc., 473 U.S. 432 105 S.Ct 3249, 87 L. Ed. 2d 313 (1985) see also Discovery House, Inc. vs Consol. City of Ind. 319 F. 3d 277 (7th Cir 2003) (In Board of Trustees of Univ. of Ala. vs Garrett, 531 U.S. 536, 121 S.Ct. 955, 964 148 L. Ed. 2d 866 (2001), the court reaffirmed the Cleburne standard for equal protection claims based on disability and said that "[S]uch a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental

purpose "(citing Heller vs Doe, 509 U.S. 312, 113 S.Ct. 2637, 125 L.Ed 257 (1993)), such dicta clearly implies an idiom of a classification running afoul if there is not a rational relationship between the disparity of treatment and some legitimate governmental purpose.

Here, Hill can easily meet the burden of demonstrating governmental action wholly impossible to relate to legitimate governmental objectives on behalf of F.J.C.. which is the significant burden required by the courts, if there were not a fundamental right and suspect class involved. See Forseth vs Village of Sussex, 199 F.3d 363 (7th Cir 2000) Not only does Hill meet the heaviest burden of proof but also the lesser burdens of "fundamental right violated Anderson-el, supra, id at 636, and "suspect class"-- Olech, supra id at 1060, and it is blatently obvious that judicial expansion of § 1915 on revocation would deprive Hill of his 5th, and 14th Amendment guaranty of Due Process of Law and Equal Protection of Law, because in the PLRA (§ 1915) Congress has not faced nor is there evidence of congressional intent to bring into issue the retroactivity of "latter imposed 3 strike sanctions" in grant of I.F.P. legitimate at time of the grant, thereby being subject to the "law of case doctrine" promoting finality of legitimate questions at issue of sufficient public interest.

To deny Hill the right for his Equal Protection claim to go forward would run afoul of the "Seperation of Powers" Doctrine as it pertains to coordination of "Legislative" and "Judicial" powers. Primarily because revocation of Hill's I.F.P. would create a public[c] policy and "the functions of creating a public policy is primarily one to be exercised by the legislature not the courts." Beecy vs Hinds county, 344 So.2d 146 (Miss 1977) cert. denied 434 U.S. 831, 98 S.Ct. 114, 54 L.Ed.2d 91 (1977).

Clearly, I.F.P. proceedings are a matter of public policy and ~~is~~ for legislature to determine what is in the public interest. See Johnson vs U.S., 163 F.30, 32 (1st Cir 1908) (sovereign immunity is a matter of public policy and our legislature determines what is in the public interest); Allbritton vs City of Winona, 101 Miss 75, 95-96, 178 So. 799, 803 (1938) appeal dismissed, 303 U.S. 627, 58 S.Ct. 766, 82 L.Ed. 1088 (1938)

Further, revocation of I.F.P. under the guise of § 1915 in which congress never

extend retroactivity. Martin vs Hadix, 527 U.S. 343, 119 S.ct. 1998, 2004-05, 144 L. Ed. 2d 347 (1999) (holding that PLRA's [new] attorney's fee provision, although governing [secondary conduct], could not be applied retroactively), is palpably improper as to place such conduct beyond the scope of the rule invoked. The callous behaviour would amount to a hightened pleading standard by the district court contrary to § 1915 and "law of case doctrine," which is inconsistent with Supreme Court teachings in Leatherman, -- hightened pleading standards are inconsistent with the "liberal system of 'Notice Pleading' set up by Federal rules" 507 U.S. at 168, 113 S.Ct 1160. In Crawford-El vs. Britton, 523 U.S. 574, 118 S.Ct 1584, 140 L. Ed 2d 759 (1998), the Supreme Court applied this rationale in the PLRA -- § 1915 context, critizizing "the creation of [n]ew rules by federal judges" Id at 596, 118 S.ct 1584. Also, the Supreme Court stated in Swier Kiricz vs Sorema, 122 S.Ct. 992, 70 USLW 4152 (Feb 26, 2002)," the court in a unanimou[s] opinion, re reiterated that courts may not require greater particularity in pleading than Federal rules require." Here, there is no plausible reason to believe that reopening the settled issue of I.F.P. grant would serve the interest of justice. 28 U.S.C § 1915. In the case subjudice Hill was granted I.F.P. in August 2005 and by the defendants own admission Hill accumalated the alleged third strike in Feb. 2006 (Def. Mot. to Dismiss pg. 4 para1).

Thus, lack of retroactivity in the PLRA context, Chaadler vs. D.C. Dept. of Corr. 145 F.3d 1355, 330 U.S. App. D.C. 285 (D.C. 1998) would render the revocation of I.F.P. grant implausible, as rather than amending 28 U.S.C. § 1915 in I.F.P. proceedings, it would have the effect of partially repealing § 1915(g), "a holding contrary to the canon of construction disfavoring repeal by implication." Ruckelshaus vs. Monsanto Co. 467 U.S. 986, 1017, 104 S.Ct. 2862, 81 L. Ed. 2d 815 (1984)

It is obvious that if carried to its logical conclusion defendant's position would deprive Hill of right to redress or right of access to the courts, right to equitable standards of pleading, and right to due process, in vindication of the Equal Protection and Due Process claim presented herein; due to the combination of an issue of law being presented and F.J.C. is failure to follow it's own regulations, which present an exception via the Equal Protection clause to the general rule of statutory pleadings

because the claim is based [directly] on a constitutional violation, not a statutory one.

House, supra id at 281, 282.

In this case, F.J.C.'s error in failing to respond to Hill submissions was not harmless because the error substantially affected Hill's fundamental right to response to his submissions derived as a member of the "public class," and as "a private person. 28 U.S.C § 620 (b)(4). which created a liberty interest of constitutional magnitude via the Due Process Clause of its own force, as well as, the invocation of the Equal Protection Clause in maintenance of the equity of representative government absent disparity on behalf of ▮▮ RKH litigant Hill as a "class of one." Discovery House, supra, id at 281.

● Hill firmly asserts en often forgotten standard, that, " eventhough Hill is a "prisoner, he also is an American Citizen that is afforded the right to due process, right of access to courts, and protection under the Equal Protection Clause. see Wolff vs. McDonnell, 418 U.S 539, 555, 94 S.Ct. 2963, 41 L. 2d. 2d 935 (1974)(a prisoner's rights and privileges are diminished compared to other citizens, but a prisoner still must be afforded certain constitutional protections . . . . . Besides a prisoner's right to religious freedom, right of access to courts, and protections under the Equal Protection Clause, inter alia, a prisoner has a right to due process. id at 556, 94 S.Ct. 2963)

In the final decisional calculus herein, on defendants' "Motion to Dismiss" the district court should consider the objective reality" of grant of retroactivity to a "latter imposed sanction" in revocation of I.F.P. grant that was ligitmate at time of questioned grant, rather than making a paradigm shift based on defendants' asserted "Subjective reality "Seeking a quantem leap from Congressional Intent of § 1915 (a) and all supreme Court dicta barring retroactivity of § 1915.; After all, a judge should not automatically adopt apparent meaning of statue without considering whether what at first seems plain to him is also plain as "objective" matter, because congress in enacting statue is presume[d] to know the law. Washington Legal Found. ▮ U.S. Sent. Comm., 17 F. 3d 1446 (D.C. Cir 1994)

Finally, there is direct authority that makes it doubly clear that revocation of I.F.P. would violate and deprive Hill of Equal Protection, Due Process, and

access to the courts. There are two interlocking and immutable principles that defendant's have not overcome, which bar retroactive of prior sanctions and either application alone is substantial support of the Law of Case Doctrine.

The language of § 1915 (a) for imposing sanctions, reads -- ... if the prisoner has, on 3 or more prior occasions, ..., brought an action or appeal... that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim .... 28 U.S.C.A § 1915. Here, § 1915 construed utilizing the doctrine of inclusio unius in U.S. vs. Lopez, by explicitly including in § 1915(a) the RMA phrase, "on 3 or more prior occasion," as prospective representation, congress implicitly recognized that § 1915 (a) had no retroactive application, 938 F. 2d 1293, 1297 (D.C. Cir 1991) (we held that by explicitly including the APA's notice and comment provisions in the SRA, Congress implicitly recognized that the rest of the APA would not apply to the Commission ....) Further, due to the specific enumeration of "prior occasions" as prospective representation, retroactive application of § 1915(a) is excluded, because also availing here is an application of the principle of expressio unius est exclusio alterius -- when a statue specifically enumerates some categories, it impliedly excludes others. Leatherman vs. Terrant County Narcotics Intelligence and coordination Unit. 507 U.S. 163, 168, 113 S.Ct 1160, 122 L. Ed. 2d 517 (1993)

Indeed Congress has spoken directly to this issue, with a firm hand in maintenance of the Due Process Clause and the Equal Protection Clause.

## II. LAW OF THE CASE DOCTRINE

Plaintiff Hill asserts that the court may sustain I.F.P. based upon the principles of "law of the case doctrine", because the record is unchanged and continues to reflect that Plaintiff Hill has demonstrated a likelihood of prevailing on the merits and is certainly threatened by imminent irreparable injury. Due to the fact § 1915(g) cannot be read so as to permit defendants to frustrate the earlier resolutions of

I.F.P. issues, violative of due process and equitable standards of pleading.

The law of case doctrine requires that when a court decides on a rule, it should ordinarily follow that rule during the pendency of the matter. See Arizona vs. California, 460 U.S. 605 103 S.Ct. 1382, 75 L.Ed. 2d 318 (1983). It is, of course, merely a prudential doctrine; nonetheless, the doctrine guides the court's discretion on issues such as the one at bar. See Slotkin vs Citizens Cas. Co., 614 F. 2d 301, 312 (2d Cir. 1979) (the law of case doctrine "does not constitute a limitation on the court's power but merely expresses general practice of refusing to reopen what has been decided")

"The rule of practice promotes finality and efficiency of the judicial process by protecting against the agitation of settled issues....." Christianson vs Colt Indus. Oper. Corp, 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed. 2d 811 (1988). Grounds justifying departure from the law of the case include substantially different evidence, a change in controlling authority or the need to correct a clearly erroneous decision which would work a manifest injustice. See White vs. Martha, 377 F. 2d 428, 431-32 (5th Cir. 1967)

Neither of the prerequisities necessary for justification of departure from the general rule of finality have been met, and eventhough I.F.P. proceedings are secondary decisions, those proceedings unlike other secondary decisions such as preliminary injunction, [do not] require periodic reconsideration of the propriety of continued interim relief. There is not a plausible reason to re-visit the final decision to grant Hill I.F.P. status and the necessity arises for the district court to apply the correct law, allowing the law of case doctrine, the Equal Protection Clause, and the Due Process Clause to prevent an erroneous decision which would work a manifest injustice," upon requested revocation of I.F.P. grant.

## Collateral Estopped / Judicial Estoppel

Plaintiff Hill asserts that current Supreme Court precedence and District of Columbia jurisprudence render the defendants requested judicial construction of

28 U.S.C. § 1915(g) unexpected and indefensible by reference to the law which has been expressed "prior" to the conduct in issue, [thus the requested construction] must [not] be given retroactive effect. Compare Bouie vs City of Columbia, 378 U.S. 347, 350, 84 S.Ct 1697, 12 L.Ed.2d 894 (1964) ("If a judicial construction of a ... statue is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, [then the construction] must not be given retroactive effect. id at 354) The imposition of "latter sanctions" or "the conduct in issue" herein under analysis of prior precedence and jurisprudence forbid retroactive application of the conduct in issue, because § 1915(g) on its face is narrow and precise, giving Plaintiff Hill no reason even to suspect that conduct [clearly] outside the scope of the statue "as written" will be retroactively brought within it by an act of judicial construction. See Mcdonald vs Champion, 962 F.2d 1455, 1462 (10th Cir 1992) id at 1458, 1459 (quoting Bouie 378 U.S. at 352); emphasis[is] added; further quotation omitted) There is not a technical nor rational argument that can be made supporting a contrary interpretation of § 1915(g), thus, the the principle of collateral estoppel and judicial estoppel avail herein to bar gevernment revocation of Hills prior grant of I.F.P. based on the "conduct in issue" or "latter sanctions," because ~~RA₩~~ retroactive application of the conduct in issue is [s]trictly forbidden. Hill was granted I.F.P. in August 2005 and the "3 strike sanction" was not imposed until Febuary 2006, by defendant's own admission (Defendants Motion to Dismiss pg.4 para.1)

In § 1915(g) congress failed to specify retroactive application of the statue, thus retroactive application of § 1915(g) is impliedly excluded by principles of inclusic unius -- Lopez, supra. at 1207, and expressio unius est exclusio alterius -- Leatherman, supra, at 517. Here, the binding principle of precedence invokes the principles of judicial estoppel and callateral estoppel on revocation of I.F.P. grant. see Hutto vs Davis, 454 U.S. 370, 375, 102 S.Ct 703 (1982) (Supreme Court precedence is binding on lower courts no matter how wrongly decided they believe it to be).

The Supreme Court precedence that prevails to strictly forbid retroactive application absent specification in § 1915(g) of the PLRA is, Martin vs Hadix, noting ~~that~~ Congress " failed to specify" an effective date for § 803 of the PLRA ... holding that the PLRA's

[new] attorney's fees provision, although agverning secondary conduct could not be applied retroactively, 527 U.S. 343, 119 S.Ct. 1998, 2004-05, 144 L.ed. 2d 347 (1999) id at 2004-05, 2006-07. Congress failed to specify retroactive application of § 1915(a) of the PLRA and sclay implied prospective application of § 1915(g) sanctions, thus, judicial expansion of the statue beyond its own terms should be considered unforeseeable because § 1915(a) is "narrow and precise" on its face. Mcdonald, supra, at 1458-59; see also Baxie, supra, at 352.

If the proposed judicial construction of § 1915(a) is given retroactive effect it would irreparably impair Plaintiff Hill's asserte[d] rights, and, therefore, have an impermissibly retroactive effect afoul of Supreme Court precedence and District of Columbia jurisprudence, see Chandler vs. Dist of Columbia Dept. of Corr., 145 F.3d 1355, 330 U.S. App. D.C. 285 (D.C. 1998) (PLRA) did not apply to prisoner's appeal that was pending at time of PLRA's effective date); see also Robinson vs. Powell, 297 F.3d 540 (7th Cir 2002) (same); Gibbs vs Ryan, 106 F.3d 160 (3rd Cir 1998) (district court may not apply PLRA's "three strike" provision to revoke I.F.P. status that was granted prior to enactment of PLRA); Alitzer vs Deeds, 191 F.3d 540 (4th Cir 1999) (same); Canell vs Lightner 143 F.3d 1210 (9th Cir 1998) ("three strike" provision does not apply to pending civil actions or appeals); Green vs Nottingham, 90 F.3d 415 (10th Cir 1996) (PLRA announces procedural rule and § 1915(g) has no retractive effect); Garcia vs Silbert 141 F.3d 1415 (10th Cir 1998) (same)

Here, the outcome therefore be governed by the Supreme Court "interpretive principle" that, "in absence of contrary indication, a statue will not be construed to have retroactive application. Landgraf vs U.S.I. Flim Products, 511 U.S. 244, 280, 144 S.Ct. 1483, 128 L.ed. 2d 229 (1994) clearly our monolithic form of goverment is subject to collateral estoppel and judicial estoppel whenever the "interpretive" doctrine is invoked, to preclude the courts from taking an inconsistent position in a civil case creating a breach of judicial integrity that would amount to "self-contradication," or forbidden "creation of new rules by federal Judges" see Crawford-EL, supra id at 596.

Eventhough, the principle of judicial estoppel is designed to operate against parties the Hutto Decree or Supreme court decree of binding precedence, see Hutto, supra, id at. 370, 375, allows the principle of judicial estoppel to operate as collateral estoppel against the government in any aspect and preclude the government from taking positions inconsistent to the decree or rule invoked in a civil case, whether government stance is that of advocacy or judiciary, in maintenance of the RKH rightly esteemed integrity of the judicial process under [equal protection analysis.]

The primary concern of the doctrine of judicial estoppel is to protect the integrity of the judicial process. see Note, Judicial Estoppel: The Refurbishing of a Judicial, 55 Geo. Wash. L. Rev. 409, 434 (1987); Comment, Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel, 80 Nw. U. L. Rev. 1244, 1248 (1986). In Patriot Cinemas vs General Cinema Corp. 834 F. 2d 208, 212 (1987), which was a civil case, the First Circuit Court of Appeals Recognized that in certain constrained circumstances a party might be precluded from "asserting a position in one legal proceeding which is contrary to a position it has already asserted in another. "The court recognized that the doctrine called "judicial estoppel," had "rather vague "contours. Id. Nevertheless, the court concluded that " intentional self-contradiction" should not be" used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice. " Id (quoting Scarano vs Central R.R. Co, 203 F. 2d 510 (3d Cir 1953)

Here, adequate judicial notice has been served that revocation of Plaintiff Hill's grant of I.F.P. would violate the concept of fundamental fairness in the pleading process due to invocation of the rule of" binding precedent "see Hutto, supra, id at 370, 375, and resultant revocation would inflict individuous discrimination upon Plaintiff Hill violative of the Equal Protection Clause and Due Process Clause, see Village of Arlington Heights vs Metr. Housing Dev. Corp., 429 U.S, 252, 97 S.Ct. 555 (1977), and such callous behavior could only be termed. "a concious RKH decision made from among various alternatives with deliberate intent." The conduct could easily qualify as intentional self-contradiction" by the government "used as a means of creating an unfair advantage on behalf of a particular party in a forum provided for suitors

Seeking [justice]." compare Patriot Cinemas, supra, id at 208, 212. If the defendant's alleged ~~construction~~ construction of § 1915(g) is embraced by the district court, such an intimate association within the judicial process certainly could warrant "strict scrutiny" review of equal protection analysis under Arlington to evaluate whether that ruling or could be 9th Amendment violation was motivated by antagonism or some other extra-judicial source. Clearly, the mere risk of such harm to the public of the issue is sufficient to invoke the principle of "judicial estoppel" to enforce constitutional guaranty against disparate treatment in preservation of status quo. Compare U.S. vs Wallace, N.D. Ala, 1963, 218 F. Supp. 290. (the courts of the United States have statutory as well as inherent power to enter such orders as may be necessary to effectuate their lawful decrees and to prevent interference with, and obstruction of their implimentation . . . .)

    Obviously, the district court is barred by judicial estopped and collateral estoppel" from revoking Plaintiff Hill's grant of I.F.P. due to the various Supreme Court decrees, District of Columbia Circuit jurisprudence, and various pocedural or legal rules invoked that are binding on the district court. Compare Sykes vs James, 13 F. 3d 515, 521 (2d Cir 1993) (parolee's § 1983 claim against parole officer barred by collateral estoppel because court in previous § 1983 action determined findings of hearing officer in revocation hearing were binding on district court).


### Seperation of Powers


    As applied herein, the Landgraf's binding precedent of the Supreme Court" intepretive principle" announced that due to implied exclusion or absence of contrary indication, § 1915(g) will not be construed to have retroactive application, supra id. at 229, as respected in Martin, supra, 119 S. Ct. 1998 and Chandler, supra, 330 U.S. App D.C. 288, but rather would permit future bar of I.F.P. grant due to "3 strike" provision which operates in futuro; the establishing precedence seeks to regulate future conduct rather than adjudicate past. It is therefore no less subject to revision by statue than is an injunction. Pennsylvania vs Wheeling +

, 131, 132, 13 L. Ed. 435 (1856)

That idiom clearly implicates retroactive application of § 1915(g) on I.F.P. grant as a matter of public policy and Legislature determines what is in the public interest, thus, retroactive application of § 1915(g) should come solely from legislative ~~RKA~~ enactment. see Johnson vs. U.S., 163 F. 30, 32 (1st. Cir 1908); Albriton vs. City of Winona, 181 Miss. 75, 95-96, 178 So. 799 803 (1938), appeal dismissed, 303 U.S. 627, 58 S.ct 766, 82 L. Ed. 1088 (1938)

Here, it is necessary to maintain that crucial balance between the judicial branch and political branches of Federal Government, and it is proper protocol to invoke the "doctrine of standing" to prevent retroactive application of § 1915(g) in revocation of Plaintiff Hill's legitimate grant of I.F.P.

The "doctrine of standing", is a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches. see Allen vs. Wright, 468 U.S. 737, 750-752, 104 S.ct. 3315, 3324-25, 82 L. Ed. 2d 556 (1984); Valley Forge Christian College vs Americans United Seperation of Church and State Inc., 454 U.S. 464, 471-476, 102 S.ct. 752, 757-761, 70 L. Ed. 2d 700 (1982). It is the role of courts to provide relief to claimants in individual or class actions, who have suffered, or will imminently suffer, actual injury; it is not the role of courts, but that of political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution. quoting Lewis vs. Casey, 518 U.S 343, 116 S.Ct 2174 (1996). Clearly, the "doctrine of standing" has a seperation of powers component, which keeps courts within certain traditional bounds vis-a-vis the other branches, concrete adverseness or not. id. at FN3. Thus, Hill's invocation of the doctrine serves to bar the district court from revoking Hill's legitimate grant of I.F.P.

# Conclusion

WHEREFORE PREMISES CONSIDERED, Plaintiff Hill moves the District court for dismissal of "Defendant's Motion to Dismiss;" stay of In Forma Pauper's status, summary judgement on behalf of Hill, due to defendant's default in affirmative

Matters of adherence by [all] applicable standards; Rinet interim motion to dismiss does not toll the clock for affirmative response and summary judgment awarding requested relief, all cost including attorney fees awarded to prevailing party pursuant to 42 U.S.CA. § 1988, and award or fine of RK# one thousand dollars per day -- payable each day that Hill is denied right to inspect or to recieve a "certified true" copy of said public records, absent intial ten (10) day compliance standard, payable to Hill's inmate account @ day. In the "Alternative" if for some "unforseeble" reason the District Court does grant defendants time to file affirmative defenses by judicial expansion of governing terms, Hill would move the court for permission to file an "Amended Complaint" pursuant to F.R. Civ. P. 18(a), to include award of punitive and exemplary damages, which are permitted eventhough the Federal Judicial Center RK# may be RK# considered an "auxillary of the courts."

In lieu of a forum designed for justice, Hill seeks expeditious administration of the business of the courts in this matter of public concern. Attorney fees submitted upon final determination or ultimate disposition.

Date _12/27/07_

Respectfully Submitted,
28 U.S.C. § 1746

x _Russell R. Hill_

14 of 14
#
14

matters of defence by [all] applicable standards; interim motion to dismiss does not toll the clock for affirmative response and summary judgment awarding requested relief, all cost including attorney fees awarded to prevailing party pursuant to 42 U.S.CA. § 1988, and award or fine of one thousand dollars per day -- payable each day that Hill is denied right to inspect or to recieve a "certified true" copy of said public records, absent intial ten (10) day compliance standard, payable to Hill's inmate account @ day. In the "Alternative" if for some "unforseeble" reason the District Court does grant defendants time to file affirmative defenses by judicial expansion of governing terms, Hill would move the court for permission to file an "Amended Complaint" pursuant to F.R. Civ. P. 18(a), to include award of punitive and exemplary damages, which are permitted eventhough the Federal Judicial Center may be considered an "auxillary of the courts."

   In lieu of a forum designed for justice, Hill seeks expeditious administration of the business of the courts in this matter of public concern. Attorney fees submitted upon final determination or ultimate disposition.

Date  12/27/07

Respectfully Submitted,
28 U.S.C. § 1746

x _Russell R. Hill_

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

Russëll Hill

    Plaintiff

      vs

The Federal Judicial Center

    Defendant

Civil Action No. 05-1567

Plaintiff's Request for; (Emergency)

SERVICE OF RESPONSE UPON DEFENDANTS

The "Plaintiff" Russëll K. Hill, as an indigent litigant would ask the District Court to expend funds to effect service of "Plaintiff's Response to Defendant Motion to Dismiss" upon the named defendant's herein in light of an atypical hardship expressed in the appended "Party Affidavit." As the affidavit asserts, Prison officials or State has failed to shoulder affirmative obligations to assure myself assistance in preperation and filing of meaningful papers, due to inadequate law library. Bounds vs Smith, 430 U.S. 817, 97 S.Ct 1491 (1977).

The shortcomings in the prison library or legal assistance program has hindered my effort to effectuate the court order herein in pursuit of a legal[L] claim. Lewis vs Casey, 518 U.S 343, 116 S.Ct 2174 (1996). Thus, prejudice is presumed and court's assistance warranted.

Date 12/31/07

Respectfully Submitted

28 U.S.C. § 1746

x _Russëll K. Hill_

"PARTY AFFIDAVIT"                                                    JDB

U.S.D.C. District of Columbia                    Case №. 05-1567

The "Plaintiff," Russëll K. Hill, as the undersigned affiant do hereby declare that I have been denied physical access to the law library at Wilkinson Correctional Facility, Woodville. Ms. for the entire month of December, 2007, as a result I have been unable to acquire copies of the enclosed "Plaintiff Response To: DEFENDATS MOTION TO DISMISS," nor notary for authentication, nor does the legal assistance provide stamps for indigents,

I have held the motion as long as I could legally hold it in the effect of the court order setting limitation to respond to defendants motion to dismiss. Yet, I have been unable to acquire the necessary copies or postage to effect service of the enclosed Plaintiff response upon the defendants. Thus, I have Placed the plaintiff response in the "Prison Mail Box" on 12/31/07.

Date 12/31/07                    Respectfully Submitted
                                 28 U.S.C. § 1746

                                 x _Russëll K. Hill_